**O**

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 12-01164 ODW |
| Plaintiff, | **ORDER DENYING MOTION FOR** |
| v. | **NEW TRIAL** |
| OSCAR LINARES, | |
| Defendant. | |

## I.   INTRODUCTION

On October 30, 2013, a jury convicted Defendant Linares on the sole count of the indictment charging a violation of 18 U.S.C. § 922(g)(1) Felon in Possession of a Firearm.  Following that conviction, Defendant Linares timely moved for a new trial pursuant to Federal Rules of Criminal Procedure, Rule 33.   Linares makes the following assignments of error, which he contends the interests of justice mandate a new trial.

/ / /

1.   Officer Lopez' testimony about Linares' post-arrest silence infringed upon his Fifth Amendment rights;

2.   It was prejudicial error to exclude evidence of Linares' intoxication;

3.   It was prejudicial error to exclude testimony that Linares had neither a backpack nor firearm earlier in the day;

4.   Prosecutorial misconduct in closing argument by misstating the law on the elements of the offense.   The Court will address each in turn.

## II.   FACTUAL SUMMARY

On October 27, 2012, Los Angeles Police Department Officers Lopez and Watson were conducting a traffic stop near the intersection of Bakman Avenue and Victory Boulevard in Los Angeles.  It was there that Officer Lopez observed Linares walking across Bakman holding a revolver in his right hand.  The officers instructed Linares to place the revolver on the ground.  Initially, Linares ignored the officers' commands.   Once additional officers arrived and following several more commands, Linares finally placed the gun on the ground.  The officers then instructed him to lie on the ground.  He refused, indicating that he had already placed the gun on the ground.  Eventually he complied and was taken into custody.

It was Linares' statement that earlier in the day he had been dropped off at a friends' house in order to help them move. He had been drinking throughout the day and he, as well as others present, was in no condition to drive at the end of the day. Linares set out toward home on foot.  At one point he walked northbound on Tujunga. In front of the residence at 6328 Tujunga, he noticed a backpack resting against the gate across the driveway.  He picked up the backpack and began walking with it, examining the three zippered pockets as he walked.  He could find nothing in the various pockets he examined, yet the backpack felt heavy.

It is Linares' version of events that in the 642 feet from the spot he picked up the backpack to the point where he first encountered the police, he didn't realize there was a gun in the backpack until he pulled it out in front of the officers.

### III.   LEGAL STANDARD

Pursuant to the Federal Rules of Criminal Procedure, the Court, on a defendant's motion, may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial may be granted if the verdict is contrary to the clear weight of the evidence in order to prevent a miscarriage of justice. *United States v. A. Lanoy Alston*, 974 F.2d 1206, 1211 –1213 (9th Cir. 1992). When ruling on a motion, the Court may weigh evidence and evaluate for itself the credibility of the witness. *Id.* at 1211.

### IV.   OFFICER LOPEZ' TESTIMONY ABOUT LINARES' POST-ARREST SILENCE IN NO WAY INFRINGED UPON HIS FIFTH AMENDMENT RIGHTS

Defendant makes a motion for mistrial because on cross examination by defense counsel, Officer Lopez indicated that Defendant made no further statements after being given his *Miranda* warning. The Fifth Amendment right to remain silent carries an implicit assurance that silence will carry no penalty. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). In order to establish a violation of due process under *Doyle*, the defendant must establish that the government inappropriately used his post-arrest silence for impeachment purposes and the court permitted it. *Greer v. Miller*, 483 U.S. 756, 764–765 (1987). The prosecutorial misconduct must be so significant that it results in the denial of the defendant's right to a fair trial. *Id.* at 765. There is no violation of due process when the prosecutor's reference to defendant's post-arrest silence acts as a fair response to the defendant's claim, or a fair comment on the evidence. *See United States. v. Robinson*, 485 U.S. 25, 32 (1988).

It is important to note that the statement was not elicited during direct examination by the prosecutor, but after being questioned repeatedly by defense counsel as to what statements Defendant made at the time of his arrest—which would have been inadmissible in any event. It was not the government which sought to call attention to the fact that the Defendant chose to exercise his rights under the Fifth

1   Amendment.  The witness was responding to questioning by the defense attorney. The

2   questioning by the defense attorney that elicited the statement was completely

3   unnecessary.

4        The defense wanted to establish that it wasn't Defendant's gun, but that he had

5   found it a short time earlier.  Counsel got what she wanted almost immediately when

6   she got an affirmative response to the question:

7        Q:  Mr. Linares told you he found the gun?

8        A:   He made a statement that he found the gun, Yes.

9        Q:  But you didn't investigate where Mr. Linares found that gun?

10       A:   He wouldn't say anything else.

11       That should have been the end of the inquiry as to statements made by the

12   Defendant.   But counsel persisted, finally extracting the response which Defendant

13   contends warrants a new trial.

14       Q: Did you ask "Where did you find it?"

15       A: Yes.  Before we continued asking him questions we *Mirandized* him

16       and he refused to answer or respond to the *Miranda* so we stopped asking

17       him questions after that.

18       Note, the officer said the Defendant refused to respond "to the *Miranda*," not

19   that he refused to respond to any further questioning.  It is a far different thing to say

20   that a defendant refused to give a response to the questions than to say that he refused

21   to answer substantive questions about the offense, answers to which might tend to

22   incriminate him (e.g. Do you understand each of these rights as I have explained them

23   to you?  Do you wish to have a lawyer?  Are you willing to answer our questions?).

24   Here, there is no evidence that substantive questions were put to the Defendant after

25   he refused to respond to the questions dealing with *Miranda* and his willingness, or

26   lack thereof, to waive his rights.

27       One other thing should be noted.  At no time during this cross-examination was

28   it established where this exchange took place—in the street, at the point of the arrest,

or at the station.  Defendant states in his motion papers, "All of this evidence suggests that Officer Lopez knowingly presented false testimony when, in response to whether he asked Mr. Lopez a question in the field, he responded that Mr. Linares invoked his right to silence after being provided with a *Miranda* advisement."  (Mot. 6.)  Putting aside for the moment that there was no evidence that Mr. Linares invoked his right to silence, an examination of the trial transcript fails to show that the question was qualified by any reference to the location of the questioning.  The testimony was that after being administered the *Miranda* warning, the Defendant "refused to answer or respond to the *Miranda* . . . ."

The Court finds that the interests of justice to not compel a new trial in this matter on this claim of error.  *See* Fed R. Crim. P. 33(a).  The error, which is debatable, was invited by the Defendant in any event.  The Defendant may not continue to probe an area which he knows will eventually result in the witness mentioning *Miranda* and the Defendant's exercise of his right to remain silent, and then claim foul because the jury hears that he invoked his rights under the Fifth Amendment.  The request for a new trial on this ground is DENIED.

## V.   EXCLUSION OF EVIDENCE OF DEFENDANT'S INTOXICATION IS NOT GROUNDS FOR A NEW TRIAL

Defendant claims that his intoxication was vital to the defense.  "[B]ut-for [his] intoxication, he would not have walked home, passed the backpack with the firearm inside, picked up the backpack, or opened it and pulled out the firearm in front of two police officers.  This evidence was essential to the defense's theory of the case—that Mr. Linares possessed the firearm through accident, mistake and ignorance." (Mot. 8:2–6.)  Voluntary intoxication is not a valid defense to a general-intent crime.  *United States. v. Barron-Rivera,* 922 F.2d 549, 551 (9th Cir. 1991).  The fact that the Defendant was voluntarily intoxicated does not relieve him of the crime committed. *See United States. v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989).  As such, the government / / /

1   does not need to prove anything about the defendant's state of mind at the time he

2   acted. *Id.* at 212 –213.

3         Defendant contends he was prejudiced by the exclusion of evidence that he was

4   intoxicated.  First, there is no evidence that he was intoxicated.  Second, there was

5   ample evidence that he had been drinking.  On no fewer than five occasions he

6   testified on direct examination that he had been drinking while and after helping a

7   friend move.  Counsel never inquired of the Defendant his level of intoxication or

8   even how much alcohol he had consumed.  Indeed, the only testimony on his state of

9   intoxication came when he indicated that "I am kind of buzzed from walking, you

10  know, from drinking or whatever, and I am just blown out of my mind.  I see them.  I

11  am like confused, just didn't know what was going on." (Trial Tr. 385:24–386:2.)

12        Defendant cites two witnesses from whom he sought to elicit testimony

13  regarding his state of intoxication.  Ms. Avalos, whom the officers were detaining at

14  the time they encountered Mr. Linares, was clearly not qualified to offer an opinion of

15  the level of Mr. Linares' state of intoxication.  Indeed, there was no evidence that Ms.

16  Avalos ever got within fifty feet of Mr. Linares, had ever seen him before, or was

17  otherwise competent to offer an opinion as to what was or was not normal behavior on

18  his part.

19        The point remains that if the Defendant considered this an essential part of his

20  case, the burden was on him to establish the fact of his intoxication.  See *People v.*

21  *Mower*, 28 Cal.4th. 457, 477 (Cal. 2002) (stating it would not be unduly harsh or

22  unfair to allocate to the defendant the burden of proving the facts underlying

23  his defense);  *see also People v. Sherow*, 196 Cal.App.4th 1296, 1307 (Cal. Ct.App.

24  2011) (stating that for some affirmative defenses, the defendant has been required to

25  prove the underlying facts by a preponderance of the evidence).  He took the stand and

26  testified, and was the witness in the best position to discuss his intoxication.  He did

27  not attempt to do so, and that failure does not warrant the grant of a new trial.

28  / / /

The Defendant apparently concedes that voluntary intoxication is not a defense to this general-intent crime.  In his Reply, he argues that the purpose of the information on intoxication was to explain conduct, that the government argues was evidence of consciousness of guilt, that he was knowingly in possession of a firearm. (Reply 2, 3.)  Instead, the defense maintains that the intoxication offered an alternative explanation for his delayed reactions in responding to the officers' commands.  He also points out that intoxication would have corroborated his testimony and his credibility "was central to the case."  (Reply 3:20.)

The jury could have concluded that Mr. Linares' testimony was not credible, based on his testimony stating that he was unable to open three zippers on the backpack as he walked over 600 feet.  If they so concluded, then they would have also found that he knew of the nature and character of the heavy object in the bag long before he encountered the two police officers.

## VI.   WHETHER LINARES HAD THE BACKPACK TEN HOURS BEFORE HE WAS ARRESTED OR TEN MINUTES IS OF NO LEGAL SIGNIFICANCE

Defendant makes much to do about whether he was in possession of the backpack and/or handgun when he awoke the morning of his arrest.  He was not arrested for possession of the handgun until approximately 10:30 pm that night.  If time of possession was an element in 18 U.S.C. § 922(g) there might be some relevance to whether the Defendant had been seen earlier in the day with either the backpack or the handgun.  The fact remains, however, that it is unlawful for any person convicted of a felony to possess a firearm.  18 U.S.C. § 922.  In order to prove the charge of unlawful possession, the government must prove beyond a reasonable doubt that the defendant was convicted of a felony, and also knew that he was in possession of a firearm.  *United States v. Williams*, 33 F.3d 876 (1994).  "The statute explicitly punishes 'possession', not retention, and thus in no way invites investigation into . . .  how long that possession lasted."  *Unites States v. Johnson*, 459 F.3d 990, 996 (9th Cir. 2006).  It was Defendant's unrebutted version that he found the

backpack containing the handgun just shortly before he came upon the police officers. He was holding the gun in his hand and he testified that he realized that what he was holding was a firearm. "Well, I guess you could say I knew I had a gun in my hand." (Trial Tr. 396:10–11.) Therefore, his argument that his possession was a mistake is unavailing. Transitory? Perhaps. But one would have to believe that it took him two blocks to search a backpack that had *only* three zippered compartments. And even if his version of events is true, transitory possession is not a defense to unlawful possession of a firearm. *United States v. Teemer*, 394 F. 3d 59, 64 (1st Cir. 2005).

Therefore, the fact that several witnesses were not permitted to testify that they did not see the Defendant in possession of either the backpack and/or the handgun earlier in the day was neither prejudicial nor error.

## VII.   DEFENDANT KNOWINGLY POSSESSED THE FIREARM AND THE CLOSING ARGUMENT BY PROSECUTOR DID NOT MISSTATE THE LAW

Defendant argues that it was prejudicial error for the jury not to have been advised by the prosecutor that knowing possession required an absence of mistake, accident or ignorance. A person has possession of something if he knows of its presence and has physical control of it, or the power and intention to control it. *United States v. Cain,* 130 F.3d 381, 382 (9th Cir. 1997). Even if the defendant held the firearm for a few seconds, he could properly be convicted of possession within the meaning of § 922(g). *United States v. Mercado*, 412 F.3d 243, 251 (1st Cir. 2005).

The evidence in this case shows that if anything, the Defendant came into possession of the firearm through theft. His version is that he observed the backpack sitting beside the gated driveway of a home on Tujunga. He testified that it looked abandoned, as though that would provide justification for taking something that didn't belong to him. In any event, he testified that he looked through the bag as he walked, a distance of over 600 feet. According to him, it took the entire 600 feet to unzip two compartments, insert his hand and conclude that there was nothing in those

compartments, yet the bag was heavy.  Upon unzipping the third compartment he found the gun.  He testified that he "took it out, and [ ] noticed it was a gun." (Trial Tr. 385:17–18.)  He didn't put the gun back in the backpack and consider how to safely dispose of it, or even return it to where he found it.  Instead, he continued to walk down the street carrying the gun by the grip, under the backpack as though to conceal it from view.

The government argued that the crime of unlawful possession of a firearm was complete once the Defendant realized that what he was holding was a firearm.  That was correct.  *See United States v. Mercado* at 251.  Accepting Defendant's version of events as true—that he acquired the backpack and firearm over 600 feet from where he first encountered the two police officers, and once he picked up the backpack he set about trying to determine why it was so heavy—the jury could have reasonably concluded that he discovered the firearm within 20-25 feet of having picked up the bag.  There is no evidence of mistake, ignorance or accident.  Defendant picked up a bag that didn't belong to him, perhaps hoping that he would find something of value.  Well, he did.  And instead of returning it to where he found it, he continued walking down Victory Boulevard with the gun in his hand.  There is nothing accidental or mistaken about that.  An astonishing display of ignorance, perhaps.  But that does not warrant a new trial.

**IT IS SO ORDERED.**

February 7, 2014

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

9